## The Atlantic Refining Co. v. Cohen et al. No. 2

*Saul, Ewing, Remick & Saul*, for plaintiff.

*William A. Gray* and *Edward Davis*, for defendants.

BROWN, JR., and HEILIGMAN, JJ., October 18, 1938.— This case is before us on a motion for a preliminary injunction. It grows out of a demand by a committee representing the Building and Construction Trades Council of Associated Trades of Philadelphia and Vicinity (hereinafter referred to as the council), one of the defendants,

that plaintiff insert in all contracts which it should make for construction work a clause requiring the work to be performed only by union labor. The committee seems also to have raised some question in regard to construction work that was then being done for plaintiff by a contractor or subcontractor who was employing non-union labor. In response to the committee's demands, plaintiff replied that it would pursue its policy of awarding contracts to the lowest responsible bidder. Thereupon, the council instituted the various activities against which relief is sought by plaintiff. Plaintiff's principal place of business was picketed. Cards and stickers were distributed stating: "Atlantic Refining Co. Unfair to Organized Labor, 'Do Not Patronize'." Plaintiff was placed on the "We Do Not Patronize List" of the council, and cards to that effect were distributed. Various members of Local 107 of the International Brotherhood of Teamsters, Chauffeurs, Stablemen and Helpers of America, and of the International Brotherhood of Teamsters, Chauffeurs and Helpers of America, Local 470 (hereinafter referred to as the locals), both named as defendants, visited customers with whom plaintiff had contracts for the supply of petroleum products, and urged them to cease patronizing plaintiff on penalty of having their truck drivers, who are members of one or the other of the locals, go out on strike. Several of these customers complied with this demand.

Plaintiff claims that these activities constitute an unlawful conspiracy among defendants to destroy plaintiff's business by the institution of a secondary boycott of plaintiff's products and the picketing of its property. Defendants deny that their actions constitute either a conspiracy or an unlawful secondary boycott, and further assert that the case involves a "labor dispute" within the meaning of the Labor Anti-Injunction Act of June 2, 1937, P. L. 1198, 43 PS §206. Plaintiff contends, however, that a "labor dispute" is not involved, but concedes that if it is this court would have no jurisdiction to grant a prelimi-

nary injunction in the present state of the record. It is therefore necessary, in the first instance, to determine this question.

The Pennsylvania Labor Anti-Injunction Act, supra, has not, as yet, been construed by the appellate courts of this Commonwealth. Similar legislation in other States has reached courts of last resort in comparatively few cases, and lower courts are hopelessly divided in their views on practically every situation that has arisen under such acts. The Act of Congress of March 23, 1932, 47 Stat. at L. 70, c. 90, 29 U. S. C. §101, known as the Norris-La Guardia Anti-Injunction Act, has been variously construed by the lower Federal courts, and has received significant attention from the United States Supreme Court in only two cases. No case has been presented to us by counsel, nor has any been discovered thus far by our independent research, in which the facts are analogous to those in the instant case. We are, therefore, forced to determine the present issue without the aid of case authority in this or other jurisdictions.

Under the circumstances it will be helpful to consider briefly the history of this act, and similar legislation in other jurisdictions, all of which were patterned after the Norris-La Guardia Act. In 1914, Congress passed the Clayton Act of October 15, 1914, 38 Stat. at L. 730, c. 323, 29 U. S. C. §52, limiting the power of the Federal courts in granting injunctions in cases arising out of labor controversies. That act, however, received a very narrow construction in Duplex Printing Press Co. v. Deering et al., etc., 254 U. S. 443, 472, where the court held that the restrictions on the granting of injunctions applied only as to "those who are proximately and substantially concerned as parties to an actual dispute respecting the terms or conditions of their own employment, past, present, or prospective." The great number of injunctions which issued from State and Federal courts after this decision eventually resulted in a shift in public opinion, which culminated in the passage of the Norris-La Guardia Act.

The reports of the Senate and House Committees on the Judiciary in reference to that act clearly indicate that it was the intention of Congress to extend the scope of the Clayton Act and to circumvent the effect of the decision in the Duplex case, supra, which was specifically referred to in the House committee's report. See H. R. Report No. 669, 72d Congress, 1st session, ser. no. 9492, and Senate Report No. 163, 72d Congress, 1st session, ser. no. 9487. The definitions in that act, which are substantially similar although not quite so extensive as those in the Act of 1937, supra, were inserted "in order that the limitation [on the issuance of injunctions] may not be whittled away by refined definitions of what persons are to be regarded as legitimately involved in a labor dispute"; Senate Report, supra. See also Geo. B. Wallace Co. et al. v. International Association of Mechanics, etc., et al., 155 Ore. 652, 63 P. (2d) 1090. We assume that the same purposes prompted the passage of the Act of 1937, supra, which is, as we have said, even more inclusive than the Federal act.

With this background in mind, we proceed to a consideration of the definitions in section 3 of the Labor Anti-Injunction Act. This provides, in part, as follows, the clauses most pertinent to the present case being italicized:

"When used in this act and for the purposes of this act—

"(*a*) A case shall be held to involve or grow out of a labor dispute when the case involves persons who are engaged in a single industry, trade, craft or occupation, *or have direct or indirect interests therein,* or who are employes of the same employer, *or who are members of the same or an affiliated organization of employers or employes,* whether such dispute is—(1) between one or more employers or associations of employers, and one or more employes or associations of employes; (2) between one or more employers or associations of employers, and one or more employers or associations of employers; or (3) between one or more employes or association of em-

ployes, and one or more employes or association of employes; *or when the case involves any conflicting or competing interests in a 'labor dispute' (as hereinafter defined) of 'persons participating or interested' therein (as hereinafter defined).*

"(*b*) A person or association shall be held to be a *person participating or interested* in a labor dispute *if relief is sought against him or it, and if he or it* is engaged in the same industry, craft or occupation in which such dispute occurs or *has a direct or indirect interest therein, or is a member, officer or agent of any association composed in whole, or in part, of employers or employes engaged in such industry, trade, craft or occupation.*

"(*c*) The term *'labor dispute'* includes *any controversy concerning terms or conditions of employment*, or concerning the association or representation of persons in negotiating, fixing, maintaining, changing, or seeking to arrange terms or conditions of employment *or concerning employment relations or any other controversy arising out of the respective interests of employer and employe, regardless of whether or not the disputants stand in the proximate relation of employer and employe,* and regardless of whether or not the employes are on strike with the employer."

All the parties involved in the present case have at least "indirect interests" in the building construction industry or are "members of the same or an affiliated organization" of employes: the contractors are in that industry; defendant council is the representative body of labor organizations which have members who are employes in that industry; defendant Local 470 is represented in the council; defendant Local 107 is a member of the Central Labor Union, an "affiliated organization" in the American Federation of Labor; and plaintiff has business dealings and contractual relations with persons engaged in that industry. It will be noticed that subsection (*a*) goes on to specify various parties who may be involved in a labor dispute within the meaning of the act.

It then provides for an *additional* category of cases included in the definition:

". . . *or* when the case involves any conflicting or competing interests in a 'labor dispute' . . . of 'persons participating or interested' therein . . .". These latter terms are then defined.

It is difficult to conceive of a broader definition of "labor dispute" than that contained in subsection (c). Can it be denied that there is *involved* in this case a "controversy concerning terms or conditions of employment" or "employment relations" or one "arising out of the respective interests of employer and employe"? In order to fortify its meaning, the legislature included in this subsection a clause which abrogates the requirement of the Duplex case, supra, that the disputants be employer and employe. This clause expressly provides that it shall be immaterial whether or not "the disputants stand in the proximate relation of employer and employe", and "whether or not the employes are on strike with the employer." Clearly, therefore, there need be no direct dispute between a plaintiff and his employes. In the present case, plaintiff is involved in the controversy by virtue of the fact that defendants want to induce the contractors, whom plaintiff procures to do its construction work, to hire only union employes. We believe that subsection (c) contemplates such a situation. In addition, section 3(h) of the Labor Anti-Injunction Act provides:

"The term 'employe' is declared to include all natural persons who perform services for other persons, *and shall not be limited to the employes of a particular employer* . . .".

Section 3(b), defining "a person participating or interested" in a labor dispute, apparently refers only to a defendant in a suit for an injunction, for it uses the terms: "if relief is sought *against* him or it". We have already pointed out that defendants in the present case all have a "direct or indirect interest" in the construction industry, that defendant Local 470 is a member of

the council which represents employes in that industry, and that defendant Local 107 is an affiliated labor organization.

It appears, therefore, that we are here presented with a controversy between defendants and contractors in the construction industry over terms and conditions of employment, or employment relations. Looking at the case from another perspective, we have a controversy between plaintiff and defendants, all of whom have direct or indirect interests in the construction industry, over the employment relations of the contractors with whom plaintiff deals. In either light, we feel that the definitions of section 3 embrace the present situation. This conclusion becomes inescapable if we also consider the history and background of the act, and especially the *cumulative effect* of all of its provisions. We think that, basically, the legislature intended to place restrictions on the issuance of injunctions in any case arising out of the attempt of labor organizations to broaden their field of activities and increase their membership. In the present case, defendants are apparently endeavoring to induce building contractors to hire only union employes. To accomplish this aim, it is not unnatural that they should seek the aid of those who patronize the contractors. The activities engaged in by defendants in this process may be actionable under common-law principles. We feel, however, that such a situation was contemplated by the legislature and was intended to be included within the restrictions of the Act of 1937, supra.

"Whether such legislation is in the best interests of the commonwealth is a legislative and not a judicial question. The function of the court is to declare the law as it is and not what it thinks it ought to be": Geo. B. Wallace Co. et al. v. International Association of Mechanics, etc., et al., supra, page 661. The act having been duly passed and approved, it is not our function to "whittle away" its full force and effect by judicial construction.

Plaintiff contends that section 13 of the act indicates

that the present situation was not intended to be included within the terms of the act. This contention is based on the argument that section 13 requires the order there quoted to be included in *every* injunction issued under the act, and that such an order would be meaningless in the present case, since plaintiff has no employes who are "not working because of the labor dispute". A reading of this section reveals, however, that it requires the inclusion of the order set forth *only* in cases where plaintiff's employes are defendants or are on strike, and section 3 (*c*) clearly provides that the act shall apply, if the other definitions are satisfied, "regardless of whether or not the disputants stand in the proximate relation of employer and employe, and regardless of whether or not the employes are on strike with the employer." By way of contrast, it will be noticed that section 14 requires the inclusion of the order therein set forth in *"Every restraining order, temporary or permanent injunction* issued by a court of this Commonwealth in any case involving or growing out of a labor dispute".

It is our opinion that the present case is embraced within the definitions of section 3 of the Act of 1937, supra, and that the requirements of that act must, therefore, be satisfied before a preliminary injunction can be issued. Plaintiff concedes that neither the bill nor the proofs will support the findings of fact which section 9 requires to be made as a prerequisite to the granting of any injunctive relief under the act.

The constitutionality of the Act of 1937, supra, has not been raised, and so it is unnecessary for us to consider this question at the present time.

Plaintiff's motion for a preliminary injunction is, therefore, denied.